60,061-07

IN THE
COURT OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| Ex Parte Larry Michael Francis § | | AND IN THE |
| Applicant § | | 1ST JUDICIAL DISTRICT COURT |
| § | | AT JASPER COUNTY, TEXAS |
| § | | Trial Court No. JD-8968-HC |
| § | | CCA No. 60,061-001 |

AMENDED ACTUAL INNOCENCE CLAIM SEEKING RELIEF UNDER
ARTICLE 11.07, SECTION 3 OF THE
STATE OF TEXAS CODE OF CRIMINAL PROCEDURE

RECEIVED IN
COURT OF CRIMINAL APPEALS

JAN 20 2015

Abel Acosta, Clerk

TO THE HONORABLE JUDGE OF SAID COURT:

Applicant, Larry Michael Francis, TDCJ-MTC No. 0111826 currently unlawfully incarcerated in TEXAS DEPARTMENT OF CRIMINAL JUSTICE - Management and Training Corporation located at Sanders Estes Correctional Center, 1100 Hwy 1807, Venus TX 76084, Johnson County, Texas, in pro se capacity and unable to afford an attorney, files this his Amended Actual Innocence Claim Seeking Relief Under Article 11.07, Section 3 of the State Of Texas Code of Criminal Procedure, to amend his claim amount for compensation and to request a Special Review of his Original claim(s) for relief.

Amended Claim Amount For Compensation

Applicant's original habeas corpus filing was made in March 2003, but was ignored by the court and no notice to Applicant was given to allow timely recourse or remedy of the claim. Since that time, subsequent filings of Article 11.07 have been dismissed under Subsequent Writ Doctrine without written order and without prejudice. Applicant has remained unlawfully incarcerated for nearly twelve and one-half years (12½ years). Applicant's claim for compensation is based on the usual one thousand dollars per day ($1,000.00/day); however, the Courts limit aggregate compen-

1.

sation to a lump sum amount of eighty-five thousand dollars per year ($85,000.00/year) plus an annuity in the same (matching) amount ($85,000.00/each year in payments) plus a state-provided insurance plan equal to that of state employees. [Note to Court: To date, Applicant's lump sum amount has accrued to $1,105,000.00, and the matching annuity has accrued to the same amount. Therefore, as of this filing Applicant's amended claim for monetary compensation in the aggregate is $2,210,000.00, plus the insurance.]

<u>Applicant's Request for Special Review</u>

Under the current review policy of Court of Criminal Appeals of Texas, known as Subsequent Writ Doctrine, most subsequent filings for habeas corpus relief are summarily dismissed without written order unless there is evidence of ineffective assistance of counsel, an actual innocence claim, new evidence that was not available at trial, the outcome of the conviction would have been different, and the Applicant has the ability to investigate and discover grounds to overturn his conviction. The usual Discretionary Review period has already expired on Applicant's last filing (most recent subsequent CCA No. WR-60,061-007), and therefore Applicant must seek relief directly from the trial court officials under a request for Special Review. At the time of Applicant's unlawful conviction the District Courts had discretionary power to reverse unlawful convictions and restore lawful unadjudicated community supervision probated sentences, or reduce the sentences, or both. Applicant requests Special Review and provides for the Court's convenience true and correct copies of three (3) letters that summarize best Applicant's claim(s) for relief:

1. February 28, 2008, letter to Ms Catherine Alexandra Simmons (Ex Parte Francis, 8968-HC-B and Request for Special Review Vote);

2. October 26, 2008, letter to Honorable Joe Bob Golden (Request for Rehearing on Motion to Adjudicate Guilt & Revocation);

3. August 28, 2009, letter to Honorable Joe Bob Golden (Ex Parte Francis)

2.

## Certification

All of the facts and allegations contained in the foregoing document and in the attachments are true and correct and not misleading to the best of my knowledge and belief.

Respectfully Submitted,

*Larry Michael Francis*

Larry Michael Francis, Applicant

Signed on January 4, 2015,
at Johnson County, Texas.

THE STATE OF TEXAS               §
JOHNSON COUNTY                   § SS: Signed Statement by Inmate

## Certification of Service by Mailing

True and correct copies of the foregoing document were mailed to:

Honorable Judge Craig Mixson, 1st District Court, 121 N Austin St, 205 Courthouse, Jasper TX 75951;

District Clerk Kathy Kent, 121 N Austin St Rm 202, Jasper TX 75951;

District Attorney Steve Hollis & Assistant District Attorney Andrea Clinger, 121 N Austin St Rm 101, Jasper TX 75951;

County Sheriff Mitchell Newman, 101 Birch St, Jasper TX 75951;

Deputy Sheriff Joe Sterling, Precinct 6 Constable, PO Box 507, Evadale TX 77615;

Chris Thomas, Director Adult CSCD, 121 N Austin St Rm 301, Jasper TX 75951;

John Stephen Seale, Attorney-at-Law, 146 E Lamar, Jasper TX 75951;

Clerk of Court Louise Pearson, Texas Court of Criminal Appeals, Supreme Court Bldg, 201 W 14 St, PO Box 12308, Capitol Station, Austin TX 78711-2308;

Special Legal Counsel Brian McGiverin, Prison Justice League, 1405 Montopolis Dr, Austin TX 78741;

3.

file (2).

_Larry Michael Francis_
Larry Michael Francis, Affiant

Signed on January 4, 2015,
at Johnson County, Texas.

Reply to:
Larry Michael Francis
TDCJ-CID No 01118261
Mark W Stiles Unit - ST/049
3060 FM 3514  19-Bldg X-052
Beaumont TX 77705-7635

Thursday, February 28, 2008

Respondent:
Catherine Alexandra Simmons
Assistant Criminal District Attorney
State Bar No 24037493
Jasper County Courthouse
121 N Austin Rm 101
Jasper TX 75951

Re: Ex Parte Francis, 8968-HC-B and Request
for Special Review Vote

Dear Ms Catherine Alexandra Simmons:

It is my understanding from information that I received from Honorable Joe Bob Golden that you placed a vote on my recent time cut because current District Attorney Steven Hollis had been my defense attorney during my trial. You also signed Respondent's Original Answer in my application for a writ of habeas corpus (referenced above). The writ was dismissed (not denied) without prejudice with no written order, and there is a motion pending for amendment of the order to dismiss. In plain terms, the CCA did not deny my writ on the merits of my petition. Your original answer was not timely filed, and according to statutes you are only permitted to file a general denial. The purpose of this letter is to provide you with information that was not available to you, or was kept from you for political reasons.

In this letter I will be alleging prosecutorial misconduct committed primarily by former Assistant District Attorney in pursuit of a full DA's position, and supported by trial officials and officers in the Sheriff's Department of Jasper County. District Attorney Hollis will already be aware of some of the evidence in support of my complaint, and other supporting information is public record because of information that I supplied to my file at Community Supervision Corrections Department during my probationary period and in the Memorandums In Support of my first two applications for habeas corpus relief. I affirm that my allegations are true and correct to the best of my knowledge and belief. I will attempt to be brief in my statement of the facts, but I will also need to give enough detail to disprove any information in my file which is misleading or included by officials in bad faith. A probationer's file is intentionally kept from the eyes of the probationer, even though it is legally public record. Since I do not know all of the information that is in the file, I do not know what to dispute. This applies also to the file which was sent to TDCJ-CID from Jasper County.

I will reference information sources as follows: Court Records (CR), Trial Transcript (TT), Community Supervision Corrections Department file including probationer's quarterly reports (CSCD), Writs (HC-A) or (HC-B), Pre-Sentence Investigation Report (PSI), related verbally (V).

1

In a habeas corpus writ or in a Request For Time-Cut, an offender tells his side of the story and presents mitigating circumstances. I believe that my incarceration in TDCJ-CID is unlawful and that I should be compensated for the time that I have served and for bad faith actions by trial officials, and that I should be immediately released from prison. I am not an attorney and I am defending myself in pro se capacity. The services of a post-conviction attorney are not guaranteed by the justice system. Therefore, I will plainly and clearly state my claim as best I know how:

## NATURE OF MY CRIME

During the late summer of 1998 (nearly 10 years ago now) I was solicited into a sex for trade agreement with my brother-in-law's younger brother, Bradley Collier, who was 16 years of age at the time. This type of agreement was new to me, but not to him. He boasted of four other "sugar-daddies" not including his own grandfather. Immediately after our first time for sex, Brad began to extort money and property from me or he would tell my wife and family about what we were doing. Shortly before he became of legal age by statute for consensual sex, he reported me to the police through my niece, Lisa Jackson (July 1999). His allegations however were not indictable, yet the District Attorney's Office combined the allegations with another indictment for my trial in April 2000. Bradley also downloaded some pornographic images onto my computer against my refusal to allow it, and made a claim to Investigator Curtis Frame that I had used my computer to solicit him.

When I was being questioned I did not know that officers had confiscated my computer and intended to keep it. When Curtis Frame typed into my confession that I had used my computer to encourage sexual activity with Brad, that was totally false, but I had no compelling reason to have him remove it from the printout, because I did not know that my property was at risk.

I did report to my brother-in-law, Jerry Collier, an inappropriate sexual contact with my 9-year-old nephew (sometime in the fall of 1998). Caleb often visited at my house and would ask if he could stay overnight. One night when I had fallen asleep in our living-room and was walking back to my bedroom, I stopped at the bedroom where Caleb was sleeping, uncovered him, pulled down his underwear, and thinking he was asleep, I put my mouth on his penis, and my hands on his buttocks. I did this for about 3 minutes, still thinking that he was asleep, but then I became disgusted at what I was doing and I starting worrying about him waking up and being hurt by what I had done. So I pulled up his underwear, covered him, and left the room. He did not let me know that he was aware of what I had done, and he continued to visit in my home, apparently without discomfort or fear that it might happen again.

## VILIFICATION

According to the most reliable source, a true incest offender has only a 5% recidivism rate, and that drops to 0% after one year, even with no treatment (CSCD). Caleb was safe and confident 9 months before I was vilified by an arrest, because I became disgusted at what I had done. Caleb was not insecure in confronting me about my crime, and when he did,

2

I assured him that he had done the right thing . I confessed to his father, and I agreed to seek help from professional counselors of his choice. He chose a group from Angelina County (one of the members had 30 years experience in law enforcement in Angelina County). After my first week's session and before they had made a determination to report my crime, my niece reported me to the Jasper County Sheriff's Department, resulting in my arrest. Because I was a fireman (one of them) I was paraded through a lineup of my fellow community servicemen, including sheriff's deputies, policemen, other fire-fighters, emergency corpsmen. They provided stern vilification for me.

District Attorney Guy James Gray instructed me to contact Forensic Psych-ologist Edward Gripon for an evaluation, and he would appoint an attorney for me if I would file for indigency (court-appointed) representation. Before Mr Gray appointed Steven Hollis as my attorney, I had written 3 letters to the District Attorney's Office (PSI). Mr Hollis then called me in for a "get-acquainted meeting" only, and told me not to write any more letters, which is what I did; but Mr Hollis never called me for any follow-up meeting. Only on the day before my first meeting with Judge Golden did I receive a postcard from Mr Hollis alerting me to the court date. At that time I had no idea what my defense strategy would be.

For the 9 months that I awaited trial, I was not restricted from having contact with minor children. CPS Agent Crockett Finch had determined that I was not a threat in the juvenile population. I learned from my first meeting with Dr Gripon that he had 38 years experience in forensics, and that he was often called upon as an expert witness for trials in Jasper County. From the beginning I told Dr Gripon all about my sexual history. He tested me thoroughly using the most advanced psychological tests. He determined that I was not a pedophile and that I was not predatory (PSI). He stated that my crime was opportunistic (not planned), and that there was "no significant chance that I would re-offend in the juvenile population." In February 2000, he released me from care because "there was nothing to treat," and he sent his report to the District Attorney's Office. (PSI)

I had been first arrested on the charge of Aggravated Sexual Assault and released on a $10,000 bond (I sold my Toyota truck)), and I went back to work. But then I received a call that I was needed at the Sheriff's Office, whereon my arrival there I was again charged with Aggravated Sexual Assault (perhaps Double Jeopardy), and I had to post a $25,000 bond (I sold my Mit-subishi car). The alleged date of my offense was not correct; it was the date of my arrest. I didn't even know the date or time. Nevertheless, Mr Hollis instructed me to sign a plea agreement to sexual assault (he marked out the phrase "any and all" allegations in the indictment so that the DA could not come back with a higher charge on a revocation).

## PRE-SENTENCE INVESTIGATION

My PSI was a fiasco with the "Good-Ole-Boys" led by Chris Thomas. Almost immediately after signing the plea agreement, Chris Thomas began presenting allegations that had not been made before my signing. He tried to charge me with allegations already known to be false in a CPS complaint, and he even presented the false allegations at trial. When I had found the images

3

that Bradley had secretly and maliciously stored on my computer, I deleted them and the folder that he had created. Chris Thomas went to the Sheriff's Office and restored the images, making it look like I had knowledge of them. I explained in court (TT) that I had only seen one of the images while it was on-screen; I had never seen the others—only the file names when I deleted them. Chris Thomas then claimed that he did not use Dr Gripon anymore, and he took the false allegations from a very vindictive and mean-spirited person, along with my file, to Dr Ray Coxe, a Sex Offender Treatment Provider, and according to Dr Coxe, Chris Thomas told him that the false allegations were true, and that the DA needed a report ato contradict Dr Gripon's report. Dr Coxe told me that Chris Thomas said that if the report contained certain wording (i.e. that I was predatory and a pedophile) that Dr Coxe could count on much more business in the future from Jasper County and other surrounding counties who would turn to him for PSI's. Dr Coxe admitted to me that he wrote into the PSI report the words that Chris Thomas had requested of him.

My primary sexual attraction is to adult males, not juveniles. My life history is filled with appropriate relationships with children. I am not predatory and there is no legitimate reason that I should be in prison. Judge Joe Bob Golden determined from my trial, even with the adverse PSI, that I should have unadjudicated probation rather than a prison sentence.

## PROSECUTORIAL MISCONDUCT ALLEGATIONS

Jasper County is a small rural county with relatively little crime. In order for an Assistant DA to compete for a full DA's position, there must be at least some significant successful prosecutions. Otherwise a rural prosecutor's record will look skimpy compared to those in crime rich neighborhoods. Assistant District Attorney was extremely disappointed when Judge Golden pronounced my unadjudicated probation, and my attorney told me that "I was a marked man in Jasper County." Mr Hollis was not the only person to tell me that. Several sheriff's deputies admitted that Patrick Hardy had personally told them to get something on me to revocate my probation. Both my CSO (Theronda Levias) and CSCD Supervisor William Sparks told me that Patrick Hardy had been passed over twice for DA, and he intended to revocate my probation so that he would not be passed over again. Both CSCD officers promised me that they would initiate a full investigation to protect me from prosecutorial misconduct by Mr Hardy. Even Stacey Chambers admitted that he had set me up for Patrick Hardy's record, so that he could advance to the position of full District Attorney. Unfortunately for me, when the time came for truth, Mr Hardy wrote an order to CSCD to prevent their intervention or any communication with me. I went to a revocation hearing with the expectation that CSCD was filing for an investigation into Mr Hardy's misconduct.

## NON-CONDITIONAL PROBATION AND PERFORMANCE

Probation conditions are strictly an agreement between the judge and the probationer (HC-A). Probation officers are not permitted to amend or alter conditions pronounced in court (HC-A). A PSI that refers to a lie-detector test (even if the defendant requests it, cannot be used, it is invalid. (HC-A)). The first issuance of probation conditions was defective. (HC-B).

4

Chris Thomas unlawfully added conditions on the defective document. When a Nunc Pro Tunc order is corrected, two items may not be amended: the Defendants Name and the Offense of Conviction. (HC-B). At the issuance of the final Nunc Pro Tunc Order for Probationer's Conditions, Judge Joe Bob Golden instructed CSO Chris Thomas that probationer Larry Michael Francis was not required to sign the Conditions for Probation. (HC-B). I did not sign the agreement. Therefore, the revocation of my probation is unlawful, because it is premised on a violation of a condition that I was not required to sign. (HC-B).

CSCD Supervisor William Sparks told me that I was not required to take sex offender treatment because it was not a condition for me. He suggested that I volunteer for the program for its benefits alone. I agreed and volunteered with the understanding that the classes would be one hour every other week (or semi-monthly) and CSCD would pay for the costs of the program. Chris Thomas tried to force himself into our classes, but I filed a complaint with the Sex Offender Treatment Board of Texas Department of Health to prevent Mr Thomas' interference with our classes. The Board ruled in my favor and also filed their own complaint with the Board of Examiners of Psychologists because the person representing herslef as my therapist was not licensed with the minimum requirements for a Licensed Professional Counselor. Dr Clark met with Chris Thomas the next meeting time, and I was dismissed from the class, unfairly. Chris Thomas had been removed from my cases because of his over-jealous and mean-spirited allegations at my trial. (CSCD).

When a probationer is dismissed from a mandated class, he is in jeopardy of revocation. However, my attendance was not mandated, although my CSO told me that if I didn't get into another class, I would have to spend each weekend from Friday evening until Monday morning in County Jail. (CSCD).

I should have contested Ms Levias' statement, but I decided to enroll in another class that was available in Beaumont, Nancy Lyons SOTP. Problems arose there because LPC Cheryl Underhill required CSO Theronda Levias to amend my (unsigned) conditions to prevent my contact with my victims. Judge Golden had made no such restriction, and had allowed my contact with Caleb, in writing (CSCD & TT). Again I filed a complaint with the State Board and once again the decision was in my favor (administratively and legally). Still, I was removed from the class and was subjected to the possiblity of revocation on unsigned conditions and in a non-mandated class. (CSCD).

Finally I signed up for treatment with Dr Ray Coxe, the person who had given the adverse report to contracdict Dr Gripon. Dr Coxe after a few weeks confessed to me what he had done at the request of Chris Thomas. He explained that he was led to believe that the false allegations had actually already been proven true, and that he was coerced into a business arrangement with Chris Thomas to point other county agencies in his direction. I continued the class and graduated in July 2002 after two years of voluntary treatment.

## COMPLIANCE WITH THE JUDGE'S ORDERS

Beside the conditions that I was not required to sign, there were specific orders given at my sentencing. I was required to reimburse the treasury for the costs of my court-appointed attorney, Mr Steven Hollis, which I did as

5

soon as the amount was reported to me (CSCD). I was required to serve (or contribute value equal to) 270 community service hours (TT). Chris Thomas was expecting me to buy him a computer for his desk, but I chose to give two new fire protection suits to my local volunteer fire department. I first had to arrange for the paperwork to qualify them for the donation, buy the suits, and then insure that Chris Thomas gave me credit for the hours (CSCD). There was no restitution ordered for my victim, as none was requested (TT). I had to report in to CSCD weekly, and pay a maintenance fee of $40.00 per month, which I paid in advance of the due date (CSCD). Note that the CSCD never paid for my classes as they had agreed. I have submitted a request to CSO Levias for compensation for time lost from my job, travel expenses, and the $35.00 per week attendance fees during my volunteer participation in treatment (CSCD).

I never missed a scheduled appointment, and when requested I promptly met with CSCD for audits of my progress. I submitted quarterly reports of my progress while in treatment, until Dr Ray Coxe instructed me that it was not a requirement for me to report to them directly. He said that he would send a quarterly report with the minimum amount of information that was needed and no more.

CSCD Supervisor William Sparks told me that if I had children in my vehicle that I should also have another adult in the car, just so that there would be no harassment from uninformed persons. I agreed and complied with his suggestion (CSCD).

Any time that a question was raised by CSCD regarding a condition, I responded in writing with a report or an objection. I passed six polygraph tests wherein I stated that I never lied to my CSO, and that I did not have any thoughts of sexual activity with children. I submitted to several Psycho-Sexual Inventory II, and Multi-Phasic Sexual Inventory II tests to determine the validity of my progress (although these did not have to be submitted to CSCD because there was no reason for concern) (Lyons and Coxe).

Graduation from SOTP meant that I had addressed the issues of my offense and had identified my primary sexual attraction to other males, and had developed appropriate sexual relationships with males 18 years and older. I have not shown any inclination to recidivate in the juvenile population, as was originally determined by Dr Gripon in 1999.

HOW THEN WAS MY PROBATION REVOCATED?

Stacey Chambers called himself the "Wheeler-Dealer" at the Jasper County Sheriff's Department because he gets offenders to trade someone else for a lesser charge, or a free pass. In his technique of "investigation" he first charges a person with a much more serious offense than they actually committed such as "organized crime" or intent to distribute, for example. Then he offers them a chance to snitch on somebody else with a more serious offense. This is what happened with Aubrey Hooker, except that I was not guilty of any crime. When Aubrey turned 18, he called me and asked me to pick him up at his work.

6

He told me that he knew that I could have sexual contact with anyone over the age of 18, and that he knew that I liked young men. I told him that I was in a treatment class where my sexual activity was defined for me by my treatment provider. It had to be appropriate, and that meant consenual (with both persons knowing the consequences of the activity), non-violent, mutually gratifying, non-degrading (meaning that it could not involve an exchange of money for sex (prostitution)), and of course legal. I further explained all of the conditions so that I knew for sure that he understood each aspect completely, and in words that he could comprehend. I did this many times over as he continued to call me to give him a ride home ffrom work. He also had a friend (over 18) who would also ride with us, but I did not discuss sexual matters with Aubrey's friend in the car. Aubrey told me that he would like to experiment with gay sex, and that he might consider sex with me some-time. No commitment to a time or place was made however.

During this time, Aubrey and his friend were caught with some drugs, and Aubrey called me at work to bail him out. I agreed to pay the minimum bond amount and I paid it for his release. I made no requirement of him for repayment, and I didn't hear from him for a while. I don't know how Sonny Conn would have become involved, as I never met the person, and I was never aware of any complaint from him until I had been in prison for several years. Since it was a secret indictment, possibly fabricated, I can only assume that Stacey Chambers made a deal with Aubrey to set me up for Patrick Hardy's conviction record, through a probation revocation.

Aubrey called me at work and said that he was ready to have sex with me at the Ramada Inn. He said to meet him at his workplace after I got off. I met him at Church's Chicken, and he was in his workclothes. He told me that he wasn't getting paid until the next Tuesday, and he needed $100 until he could pay me back out of his paycheck. I agreed to the loan and went to the ATM to get cash.

He appeared anxious to get to the Ramada, so we went and checked in. I thought that he wanted to get cleaned up, and maybe we could grab a bite to eat. After I got the key, Aubrey suggested that we take a look at the swimming pool, which was empty of water and under construction or repair. That is when he told me that it was a set-up, in order for him to get out of a very serious charge. I considered the consequences for him if I didn't help him out and play along with the set-up; and we went up to the room and staged the scene that Stacey Chambers wanted him to act out. I knew that it was a set-up to revoke my probation, and I knew the consequences were serious for Aubrey. I also trusted that CSCD would initiate a full investiga-tion to defend me from the revocation for Patrick Hardy's record.

I was charged with promoting prostitution, and organized crime. Captain Carter scratched out the organized crime charge, and I bonded out on the trumped up misdemeanor charge lacking an indictment. Stacey Chambers somehow arranged for my arrest without bond pending revocation of my probation. Pat Hardy blocked any CSCD investigation that had been promised to me. Stacey Chambers promised that I would only be in prison for two years at the most. Theronda Levias told me that Patrick Hardy had issued a letter that she could

7

not accept any correspondence from me, but that she could ask me if I wanted him to appoint another attorney for my hearing, which she did. Patrick Hardy went for a revocation and adjudication of judgment for a Fifteen Year term in prison on Sexual Assault To A Child, even though I never entered a plea of guilty for that charge and did not plead guilty to his phrase, "any and all" allegations in the original complaint. Therefore, I am unlawfully incarcerated for a charge that I did not plead guilty to.

I was scheduled for my revocation hearing on August 15th, I think. But I was called to the courtroom early, on August 1st, to answer whether the misdemeanor allegations were True. I believed that there would be an investigation against Patrick Hardy, so I answered True in front of him. By August 4th, however, I saw that nothing was being done, so I changed my plea to "Not True" in a letter directly to Judge Golden. On August 8th, Patrick Hardy had written up a revocation order wherein it was stated that I had waived my right to change my plea, but that was not true, and I did not sign it.

By September 9th, I had been rushed out of the County Jail and was at the Holliday Intake Facility, delivered there in person in the Sheriff's car by then jailer Prentice Strickland. When I filed my first habeas corpus, it was originally refused. Each time that I have filed for a writ of habeas corpus, the District Attorney's Office has not timely filed an answer. Sometimes it is month's later before the DA responds. According to statute, if the DA does not respond within 15 days, only a general denial is permitted.

## RELIEF REQUESTED

I am requesting three things from you, please:

1. Change your vote to release me early on my Time-Cut Request;

2. Withdraw your untimely answer(s) to my writs for habeas corpus;

3. Initiate the investigation that was promised to me.

I have been in prison for over five years, and I did not deserve to be in here from the beginning. I am unlawfully incarcerated, and I need compensation for the bad faith actions taken against me. My salary at the time of my revocation was $36,000.00 per year. I lost my wife because I was unable to watch her health. I have suffered much more than is reasonable. Your prompt and courteous attention to this matter is greatly appreciated.

Respectfully Submitted,

*Larry Michael Francis*

Larry Michael Francis, Requestor

no encl:
c: see list, file (1)

Reply to:
Larry Michael Francis
TDCJ-CID No 01118261
Mark W Stiles Unit - ST/049
3060 FM 3514  19-Bldg X-052
Beaumont TX 77705-7635

Sunday, October 26, 2008

Respondent:
Honorable Joe Bob Golden, Judge Presiding
1st Judicial District Court at Jasper County, Texas
Jasper County Courthouse, Courtroom # 1
PO Box 1290
Jasper TX 75951

Telephone: 409-384-3792
        Fax: 409-384-9722

Re: JD-8968, 8968-A, 8968 JD-HC-B
CCA No WR-60,061-01, -02, -03
Request for Rehearing on Motion
to Adjudicate Guilt & Revocation

Greetings, Honorable Joe Bob Golden, Judge Presiding:

This is to request the order of a Bench Warrant for my return to First Judicial District Court for rehearing of Motion to Adjudicate Guilt and the Revocation of my Court-ordered Probation. The grounds for my request are that (1) I was not required to sign Conditions of Probation upon which the motion to revoke was based, and (2) the allegations against me were untrue and unlawfully obtained. Furthermore, the allegations were obtained solely for the purpose of political gain for then Assistant Attorney Patrick Hardy, amounting to prosecutorial misconduct.

I have been unlawfully incarcerated for over six (6) years, and on January 2010 I will become eligible for parole. However, I will not be able to sign the conditions that will be presented to me by the Board of Pardons and Paroles. This is because: if I sign the parole conditions, the court will assume that I would have signed the probation conditions upon which the unlawful revocation was based; thus agreeing to my unlawful incarceration.

You once wrote me that TDCJ officials are competent to handle conditions of incarcerated persons. Former TDCJ Executive Director James "Andy" Collins was recently quoted in Prison Legal News, September 2008, that prison officials are "powerless" to correct the mistakes of prosecutors and judges. But there remains a remedy: you have discretionary power to (1) reinstate my probation or (2) reduce my sentence, or both. I have time credits for over six (6) years flat time, six (6) years good time, and about four (4) years work time while incarcerated. I have over two years credit during probation, which included my voluntary participation in a mental health-care program from which I graduated. Dr Gripon reported to you that I am not predatory, not a pedophile, and my crime was opportunistic; and there was no significant chance that I would recidivate in the juvenile population (Dr Gripon was selected for me by District Attorney Guy James Gray because he was an expert witness for the Court and had 38 years experience in forensic psychology).

1

Dr Gripon released me from treatment prior to my trial because "there was nothing to treat." I had already done all that I could to insure that my victim did not suffer injury. My victim reported no harm and his mother, my sister, has written a support letter on my behalf (enclosed). I paid all fees, including treatment fees that Supervisor William Sparks had agreed to pay out of CSCD funds for my voluntary participation in Dr Clark's class. I reported as instructed and never missed an appointment for any other purpose, such as DNA sampling or meetings with CSCD supervisor. Community hours were paid by purchasing fire protection suits for Angelina River Volunteer Fire Department. All said, I did everything right, nothing wrong, and I should never have been sent to prison at all.

Further grounds for rehearing are that the revocation hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. There was no such determination in my hearing, and within 3 days I had changed my plea from "True" to "Untrue." Although eight (8) days after the hearing, Assistant DA Hardy wrote up the hearing record so that it appeared that I had waived my right to change my plea, that was not true, and I had not signed any such waiver of that right.

There are many other issues of prosecutorial misconduct that have not been resolved by the court, and a rehearing on the revocation of my probation is appropriate. There is no due process procedure that I can access from behind these prison doors, so I must rely upon a rehearing to answer my claims to unlawful incarceration and compensation for time served.

Please order Clerk of Court to issue the Bench Warrant and schedule the rehearing as soon as possible. Your prompt and courteous attention to this matter is greatly appreciated.

Respectfully Submitted,

Larry Michael Francis, Requestor

c:  Clerk of Court Linda Ryall;
    District Attorney Stephen Hollis;
    Sheriff Ronald R McBride;
    Clerk of CCA Troy C Bennett Jr;
    Board of Pardons and Paroles;
    Deputy Director Rebecca Price, Classification & Records;
    Kelly R Ward

encl: as indicated

Reply to:
Larry Michael Francis
TDCJ-CID No 01118261
Mark W Stiles Unit - ST/049
3060 FM 3514  19-Bldg X-052
Beaumont TX 77705-7635

August 28, 2009

Respondent:
Honorable Joe Bob Golden
969 Hunterwood
Jasper TX 75951

Re: <u>Ex Parte Francis</u>; CCA 60,061
Trial Court No JD-8968-HC-B

Greetings, Honorable Joe Bob Golden:

For over 7 years I have languished in prison, unlawfully incarcerated, while those who should have been here have advanced their careers through prosecutorial misconduct. All this time I have awaited the investigation into Patrick Hardy's politically motivated activities, an investigation that both CSCD Supervisor William Sparks and CSO Theronda Levias promised would be conducted when Hardy made his move.

"Wheeler-Dealer" Stacy Chambers arrested Aubrey Hooker for possession of marijuana, and Aubrey called me for help on bond. Chambers made a deal with Aubrey to dismiss the charges against him if he would agree to sting me with a revocation of my unadjudicated probation. Aubrey told me what was planned, and I knew Chambers (and most other "Good Ol' Boys" in Jasper County who got the message from Hardy about targeting me) was out to get the record of conviction for Hardy, who needed the conviction so he could make full District Attorney. Aubrey and I talked about what we would say and do on the video before we got to the room where the sting was set up.

I went through with the sting because I knew that Hardy was making his move and that evidence of his prosecutorial misconduct would be needed for the investigation that was promised to me for my defense. When I appeared before you at my revocation hearing, Hardy was present, and I had not been permitted to contact CSCD about their progress with the investigation. So, it was necessary for me to tell you that the allegations were "true," when they were not. And, since you had not required me to sign the Conditions of my probation, I was confident that Hardy would not be able to revoke my probation for allegedly violating something that you had not required of me, even if the allegations would have been "true."

Then, when I got back to the jail, I sent you a letter stating that my plea was actually "untrue" and that the CSCD was starting the investigation. Apparently, Hardy typed up some document that said that I could not change my plea to "untrue," but I never agreed to nor signed that document.

Respectfully Submitted,

*Larry Michael Francis*

Larry Michael Francis, Requestor

Reply to:
Larry Michael Francis
TDCJ-MTC No 01118261
Sanders Estes Correctional Center
1100 Hwy 1807
Venus TX 76084

                                    Sunday, January 4, 2015

Respondent:
**Special Legal Counsel Brian McGiverin**
Prison Justice League
1405 Montopolis Dr
Austin TX 78741

                            Re: Enclosed Sample of Amended
                                Claim for Relief Under 11.07

Greetings, Special Legal Counsel Brian McGiverin,

    I have enclosed a copy of my amended claim under § 11.07 as
a sample of how the Texas justice system does not work. My trial
court judge told me twice that people like me do not go to prison,
yet I have languished here for 12½ years. I "made parole" over
two years ago, and here I still sit, off the official TDCJ prison
counts but nonetheless still unlawfully incarcerated.

    In the CURE-National newsletter I learned that a proposal
will be made in this Session of the Texas legislature to create
an oversight/advisory committee consisting of some formerly incar-
cerated persons. I am recently "retired" at the age of 65+, and
would be interested in a nomination. I have 2½ years to go on a
15 year sentence that was originally a minimum 2 year unadjudicated
community supervision probation.

    I am not asking for legal assistance, nor do I need to have
any of the enclosed materials returned. I wish you the best of
luck in the next Session. I was a Delegate to the State Repub-
lican Party Conventions, so I have some idea at least of what you
are facing. I do welcome your feedback.

                        Respectfully Submitted,

                        *Larry Michael Francis*

                        Larry Michael Francis, Requestor
                        Bag of Hot Air
                        bagofhotair@gmail.com

                        kwkr.ward@gmail.com

encl: as indicated